# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 13-996V
(To be Published)

* * * * * * * * * * * * * * * * * * * * * * *
| | |
|---|---|
| MARVIN C. SETNESS, | Filed: March 26, 2015 |
| Petitioner, | |
| v. | Motion to Dismiss; Statute of Limitations; Influenza ("Flu") Vaccine; Guillain-Barré Syndrome ("GBS"); Vaccine Rule 19(a); Computation of Statute of Limitations Period |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

* * * * * * * * * * * * * * * * * * * * * * *

*Leslie Stovall*, Stovall & Assoc., Las Vegas, NV, for Petitioner.

*Alexis Babcock*, U.S. Dep't of Justice, Washington, DC, for Respondent.

### ORDER ON RESPONDENT'S MOTION TO DISMISS[1]

In his petition, Marvin Setness seeks to establish that the influenza ("flu") vaccine he received on December 1, 2010, caused him to develop Guillain-Barré syndrome ("GBS"). In tandem with her Rule 4(c) report, Respondent has moved to dismiss the case, arguing that Mr. Setness's claim is time-barred by the Vaccine Act's statute of limitations. Having reviewed the parties' briefs, I defer a ruling on Respondent's Motion until an onset hearing can be held in order to determine the date Petitioner's symptoms began.

**I.   Factual Background**

Mr. Setness received the flu vaccine on December 1, 2010. Pet'r's Ex. 2. On December

---

[1] Because this order contains a reasoned explanation for my action in this case, I will post it on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). However, as provided by 42 U.S.C. § 300aa-12(d)(4)(B), the parties may object to the posted order's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen (14) days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole order will be available to the public. *Id.*

17, 2010, he presented to the St. Rose Dominican Hospital Emergency Department in Las Vegas, Nevada and was subsequently diagnosed with GBS after several days of hospitalization. He was then transferred to a rehabilitation facility on January 4, 2011, where he remained until January 15, 2011. Pet'r's Ex. 5 at 109. At Petitioner's two-year follow-up doctor's visit, a repeat EMG/NCV[2] was consistent for a peripheral polyneuropathy. Pet'r's Ex. 7 at 227-39.

The medical records and affidavit submitted in connection with Mr. Setness's claim reveal a factual dispute as to the precise onset of his symptoms. In his affidavit, Mr. Setness asserts that he was healthy before his initial hospital visit on December 17, 2010 – making that the actual date of onset. Pet'r's Ex. 1 at 1. A neurology consultation note prepared on December 18, 2010, indicated that Petitioner had been experiencing symptoms for the past two days, thus corroborating onset on December 17, 2010. Pet'r's Ex. 9. There is also a conspicuous lack of notation in the Emergency Department Treatment Record and in Petitioner's discharge summary memorializing any symptoms prior to Petitioner's hospital admission. Pet'r's Ex. 9.

There is contrary record proof, however, suggesting that onset occurred before December 17, 2010. Mr. Setness initially reported to his first treaters "numbness and weakness of his left lower leg for the past 2 days"— suggesting that onset of his symptoms would have occurred on December 15, 2010. Pet'r's Ex. 9 at 257-58. Other medical records support an onset of December 16th. On December 20, 2010, while still in the hospital, the records indicate that Mr. Setness told a treating doctor that he was fine on December 15th, but then woke up on December 16th with a headache and some weakness in his lower extremities. *Id.* at 382. On January 4, 2011, Mr. Setness similarly stated to a different physician that his symptoms of left lower extremity weakness began "a day or two prior" to his initial hospital admission on December 17, 2010, (Pet'r's Ex. 5 at 113) – a statement that could support the 16th or even the 15th as the date of onset of symptoms.

## II.   Procedural History

On December 17, 2013, Mr. Setness filed this petition seeking compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program").[3] After Petitioner filed his statement of completion on November 6, 2014 (ECF No. 13), Respondent filed the present Motion to Dismiss (ECF No. 20), referencing arguments set forth in greater detail in her contemporaneously filed Rule 4(c) report (ECF No. 19).

Respondent's Motion asserts that Mr. Setness's claim is time-barred because it was filed

---

[2] "EMG/NCV" stands for Electromyogram and Nerve Conduction Velocity. *Dorland's Illustrated Medical Dictionary* 602, 608, 1233 (32d ed. 2012). This combination of tests measures the electrical activity of muscles and how well and quickly nerves send electrical signals. *Id*.

[3] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. § 300aa-10-34. All citations in this decision to individual sections of the Vaccine Act are to 42 U.S.C. § 300aa.

at least one day after the thirty-six-month statutory limitations period expired. Resp't's Rule 4 Report at 6. Respondent contends that evidence in the record indicates onset was actually December 16, 2010 – prior to the start of Petitioner's December 17, 2010, hospitalization. *Id*. As a result, Petitioner had until December 16, 2013, to file his claim, but failed to do so in that time period. *Id*. at 7. Relying primarily on *Cloer v. Sec'y of Health & Human Servs.*, 654 F.3d 1322, 1335 (Fed. Cir. 2011), Respondent asserts that the thirty-six-month statute of limitations period for Vaccine Program Cases begins running on the date of onset. Respondent acknowledges that in some instances the limitations period governing Vaccine Program claims has been computed in a manner that begins counting from the day after onset, but asserts that the Vaccine Rule invoked in favor of this computation approach (Vaccine Rule 19(a))[4] cannot be so applied – citing *Mahaffey v. Sec'y of Health & Human Servs.*, 368 F.3d 1378, 1381 (Fed. Cir. 2004) for the proposition that to do so amounts to the Court impermissibly expanding its jurisdiction.

Mr. Setness opposed Respondent's Motion on November 24, 2014 (ECF No. 21) ("Response"), acknowledging that there is conflicting evidence on the record about onset, but maintaining that there is sufficient evidence to support December 17th as the actual date of onset. Petitioner also distinguishes evidence of symptoms prior to his hospitalization, arguing that they are more likely attributable to one of his pre-existing conditions, including Gastroesophageal reflux disease, hypertension, asbestosis, osteoarthritis in the knee and pelvis, and sleep apnea; and therefore are unrelated to his subsequent GBS diagnosis. Response at 4-5. Alternatively, Petitioner argues that the earliest onset could have been was December 16th, but applying Vaccine Rule 19(a), his claim would still be timely. *Id.* at 6.

Respondent did not file a reply to Petitioner's Response, and so the Motion is now ready to be decided.

### III.  Analysis

Respondent's Motion asks that I dismiss this case based upon certain disputed record evidence. Under such circumstances, it is appropriate that (as would be done with a motion for summary judgment) I infer the facts in the light most favorable to the non-movant. The standard of review when ruling on a motion to dismiss is similar to that of a summary judgment motion: the "court must presume all undisputed factual allegations to be true and construe all reasonable inferences in favor of the plaintiff." *Four Rivers Inv., Inc. v. United States*, 77 Fed. Cl. 592, 594 (2007), *aff'd*, 330 F. App'x 919 (Fed. Cir. 2009) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 814-15 (1982)); *see also Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988); *Xiangdong He v. Sec'y of Health & Human Servs.*, No. 08-207V, 2012 WL 1185686, at *3 n.14 (Fed. Cl.

---

[4] Respondent cites Vaccine Rules 19(a) and 19(b) interchangeably. *See, e.g.*, Resp't's Rule 4 Report at 8. As this case is dealing with computation of time and the addition of one day; however, it appears that Respondent's argument hinges on refuting the applicability of Vaccine Rule 19(a).

Spec. Mstr. Mar. 12, 2012) (applying summary judgment standard of Rule 56 of the Rules of the Court of Federal Claims to decide motion to dismiss based on statute of limitations).

The statute of limitations prescribed by the Vaccine Act is thirty-six months. 42 U.S.C. § 300aa-16(a)(2). The period in which to bring a Program claim terminates "after the expiration of 36 months after the date of the occurrence of the first symptom of manifestation of onset or of the significant aggravation of such injury." *Id*. In determining the terminal date for filing a Vaccine Program claim using months as the unit of measure, special masters have frequently followed the common sense approach of starting from the date of accrual "to a day of the corresponding number" in the final month. *See, e.g.*, *Castaldi v. Sec'y of Health & Human Servs.*, No. 09-300V, 119 Fed. Cl. 407 (2014); *Powell v. Sec'y of Health & Human Servs.*, No. 03-417V, 2014 WL 2584192 (Fed. Cl. Spec. Mstr. May 19, 2014); *see also* 86 C.J.S. *Time* § 8 (2015). As a result, because this action was filed on December 17, 2013, it could be considered untimely if this cause of action had accrued earlier than December 17, 2010, as Respondent argues the record indicates. Special masters have in fact dismissed cases that were filed outside the limitations period, even by a single day or two. *See, e.g.*, *Spohn v. Sec'y of Dep't of Health & Human Servs.*, No. 95-0460V, 1996 WL 532610 (Fed. Cl. Spec. Mstr. Sept. 5, 1996) (dismissing case filed one day beyond thirty-six-month limitations period), *mot. for review denied*, (Fed. Cl. Jan. 10, 1997), *aff'd*, 132 F.3d 52 (Fed. Cir. 1997).

As the Petitioner notes, there is a Vaccine Rule[5] relevant in computing the limitations period. Vaccine Rule 19(a)(1) specifies a computational method applicable to any rule, order, or "*applicable statute* that does not specify a method of computing time." Vaccine Rule 19(a) (emphasis added). Under Vaccine Rule 19(a)(1)(a), which applies to periods of time stated in days or longer units (i.e., months), when computing time "exclude the day of the event that triggers the period." Rule 19(a)(1)(a). Given that neither the Vaccine Act itself nor its limitations period specifies a method of computing time, Rule 19(a) is applicable to the statute of limitations in the Vaccine Program. As such, the actual thirty-six month limitations period should be computed beginning the day after the date of onset or significant aggravation.

Mr. Setness argues that application of Rule 19(a) effectively provides an additional day in which to file a Vaccine Program claim. Even if his symptoms began on December 16, 2010, the action would still be timely if filed by December 17, 2013, because the counting of months for purposes of determining the limitations period would not begin until the day *after* onset. Response at 6. It is true that other special masters have interpreted the interaction between Rule 19(a) and the statutory limitations period in the manner urged by Petitioner. For example, in *Guillot v. Sec'y of Health & Human Servs.*, No. 03-0775V, 2012 WL 3867160, at *1 (Fed. Cl.

---

[5] As set forth in 42 U.S.C. § 300aa-12d(2), "[t]he special masters shall recommend rules to the Court of Federal Claims and, taking into account such recommended rules, the Court of Federal Claims shall promulgate rules." These rules apply to all Vaccine Program cases. Vaccine Rule 1(a).

Spec. Mstr. Aug. 15, 2012), the petitioners alleged that their child had suffered from a vaccine-related encephalopathy beginning the same day he received the vaccine – May 14, 1999. After carefully laying out the statutory language and the language of Vaccine Rule 19(a), the special master concluded that Vaccine Rule 19(a) informed the computation of the Vaccine Act's limitations period, and therefore "[t]o have been timely filed under the Vaccine Act, petitioner's claim must have been filed *on or before May 15, 2002*." *Guillot*, 2012 WL 3867160, at *1 (emphasis added).[6]

Respondent contends that a more restrictive computational method should be applied that does not take into account Vaccine Rule 19(a). In support, she points to language from the Federal Circuit's decision in *Mahaffey* for the proposition that "a procedural rule such as . . . [Vaccine] Rule 19 cannot extend a statutory period of limitation." *Mahaffey*, 368 F.3d at 1378; Resp't's Rule 4(c) Report at 8. But *Mahaffey* is distinguishable for several reasons. First, *Mahaffey* related to the timeliness of a petitioner's motion for review of a special master's denial of an entitlement award. *Id.* at 1379. The *Mahaffey* Petitioner-Appellant argued that under a different subsection of Vaccine Rule 19 (Rule 19(c)), the 30-day period for seeking review was automatically extended by the three-day extension set forth in that provision of Rule 19 applying to service by mail. *Id.* at 1380-81. As evident in its title, however, Vaccine Rule 19 addresses two matters: how to *compute* time, and also the circumstances under which a party's time to act can be extended, whether automatically or upon a party's request. *Mahaffey* does not involve the Act's limitations period for bringing claims, it does not address Rule 19(a), and Respondent offers no legal explanation for why Vaccine Rules 19(a) and 19(c) should be equated under the circumstances.

Second, *Mahaffey*'s admonition against using the Vaccine Program rules to impermissibly expand the Court's jurisdiction does not accurately capture what occurs when Vaccine Rule 19 is applied to the Act's limitations period. Resp't's Rule 4(c) Report at 8 (citing *Mahaffey*, 368 F.3d at 1381). As noted above, Rule 19 fills an omission in the statute by providing a computational methodology. Nor is it accurate to suggest that the Court's jurisdiction is in play when measuring the limitations period – for, as the Federal Circuit itself has held, "the Vaccine Act's statute of limitations is not jurisdictional . . . ." *Cloer v. Sec'y of Health & Human Servs.*, 675 F.3d 1358, 1360 (Fed. Cir. 2012) (citing *Cloer*, 654 F.3d at 1322). Indeed, federal courts (when faced with similar objections) consistently recognize that computing time under a defined limitations period is itself merely a procedural matter. *See, e.g.*, *Am. Canoe Ass'n, v. Attalla*, 363 F.3d 1085, 1088 (11th Cir. 2004); *Salvador-Calleros v. Ashcroft*, 389 F.3d 959, 965 (9th Cir. 2004); *Bartlik v. U.S. Dep't. of Labor*, 62 F.3d 163, 166 (6th Cir. 1995). As a result,

---

[6] I am of course not bound by *Guillot*, as the decisions of other special masters are only persuasive authority (unlike the decisions of the Federal Circuit). *Guillory v. Sec'y of Health & Human Servs.*, 59 Fed. Cl. 121, 124 (2003), *aff'd*, 104 F. App'x 712 (Fed. Cir. 2004); *Hanlon v. Sec'y of Health & Human Servs.*, 40 Fed. Cl. 625, 630 (1998).

applying Vaccine Rule 19(a) to the Vaccine Act's statute of limitations provision does not amount to the usurpation of authority Respondent suggests.[7]

Despite the unpersuasiveness of such arguments, however, there is other legal support for Respondent's position regarding calculation of the limitations period for Vaccine Act claims. Vaccine Rule 19(a) is structured similarly to Rule 6(a) of the Rules of the Court of Federal Claims and Rule 6(a) of the Federal Rules of Civil Procedure – making cases interpreting those analogous rules relevant. In *United States v. Inn Foods, Inc.*, 383 F.3d 1319 (Fed. Cir. 2004), the Federal Circuit (interpreting Rule 6(a) of the Court of International Trade (which is also parallel to Rule 19(a)) held that the "anniversary date method" of computing a limitations period applied. *Inn Foods, Inc.*, 383 F.3d at 1322. Under this method, the statute of limitations was to be calculated beginning the day after the triggering or claim accrual event (consistent with Rule 6(a) and 19(a)), but the relevant statute of limitations expired on the anniversary calendar date of the triggering event rather than the anniversary calendar date for the first day from which the limitations period was calculated (the day after the triggering event). *Id.*[8]

The *Spohn* decision provides an example of application of this computational approach to the Act's thirty-six-month limitations period. The special master in *Spohn* considered whether Vaccine Rule 19(a) applied, as petitioners urged, in permitting a case to go forward that was filed a day beyond the literal expiration of the thirty-six-month period. *Spohn*, 1996 WL 532610, at *3. In calculating the statute of limitations, the special master excluded the date of onset consistent with Rule 19(a), but ultimately held that this computation method did not assist the petitioners' claim because the limitations period ended at midnight on the night *before* the

---

[7] Respondent also asserts that the Federal Circuit's decision in *Cloer* squarely supports beginning computation of the Vaccine Act's limitations period on the day of onset rather than the day after. Resp't's Rule 4 Report at 7; *see Cloer*, 654 F.3d at 1328-29 ("[t]he statute of limitations in the Vaccine Act begins to run on the date of occurrence of the first symptom or manifestation of onset of the vaccine-related injury for which compensation is sought."). However, this language, although contained in the *Cloer* decision, is dicta unaccompanied by any analysis or consideration of the applicability of Vaccine Rule 19(a) to the Vaccine Act's statute of limitations period. Rather, that decision discussed the statute of limitations only in passing to reach its ultimate holding, which pertained to the limited circumstances in which equitable tolling applies to Vaccine Program claims. *Cloer*, 654 F.3d at 1335, 1344-45.

[8] A federal district court decision, *Tribue v. United States*, 645 F. Supp. 1024, 1026 (N.D. Ill. 1986), *rev'd on other grounds*, 826 F.2d 633 (7th Cir. 1987), identifies the anniversary date method for calculating a limitations period as "clearly the majority rule" among federal courts. *Tribue* also helpfully cited *Yedwab v. United States*, 489 F. Supp. 717, 719 (D.N.J. 1980) as providing a concise walk-through for how the anniversary date method is applied in practice:

> "[t]o display the simplicity of the calculation, the court appends a 1979 calendar. Suppose the mailing date were the last day of a month, say, January 31, 1979, a Wednesday. That day would be excluded. A claimant would have the six month period *after* January 31 *within which* to begin an action by filing a complaint with the clerk of the court. This full six month period would embrace the months of February through July, and the *last* day (which is included) of that full six month period would [be] July 31, 1979, a Tuesday. To allow filing on August 1, 1979 would be to allow six months *and a day* after January 31, 1979. This is not the statutory period. The period is "six months" after the mailing date, and the action must begin "within" that period, not outside it."

petition was in fact filed –that date being the thirty-six month anniversary of the accrual of their Vaccine Act claim. *Id*.

I find that the approach set forth in *Spohn* is persuasive, as it properly takes into account Rule 19(a), but is consistent with the view of the majority of special masters about measuring the Act's limitations period. *See, e.g.*, *Shortnacy v. Sec'y of Health & Human Servs.*, No. 10-827V, 2014 WL 5269958, at *6 (Fed. Cl. Spec. Mstr. Sept. 15, 2014) (citing *Spohn* in determining that case filed on December 2, 2010, would be untimely if onset of symptoms had occurred prior to December 2, 2007, even though limitations period was calculated beginning day after onset). Thus, for Mr. Setness's claim to be timely in this case, onset of his symptoms arising from his vaccination must have occurred no later than December 17, 2010; even if the Vaccine Act's limitations period was calculated beginning the next day (December 18, 2010), it would have expired at midnight on December 17, 2013.

As noted above, there is a factual dispute as to when onset of Petitioner's symptoms began. Because I must view the evidence in the light most favorable to Petitioner, I cannot decide Respondent's motion based only on the papers, as there exists record proof supporting the conclusion that onset began on December 17, 2010. However, should Respondent be able to establish that onset more likely occurred on an earlier date, her motion would be well-founded. Resolving this factual dispute will require an onset evidentiary hearing.

## CONCLUSION

Based upon the above, I **DEFER RULING** on Respondent's Motion to Dismiss until it is determined whether onset occurred on December 17, 2010, or earlier. The parties should contact chambers to schedule a status conference to discuss setting an onset hearing.

**IT IS SO ORDERED.**

/s/ Brian H. Corcoran
Brian H. Corcoran
Special Master